2002-NMSC-016

46 P.3d 1247

**STATE of New Mexico, Plaintiff–
Petitioner,**

v.

**Chris PADILLA, Defendant–Respondent.**

**No. 26,540.**

Supreme Court of New Mexico.

May 10, 2002.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Petitioner.

David Henderson, Santa Fe, NM, for Respondent.

## OPINION

FRANCHINI, Justice.

{1} Following a jury trial, Defendant Chris Padilla was convicted of two counts of aggravated battery with a deadly weapon under NMSA 1978, § 30–3–5(C) (1969). The Court of Appeals, in a divided opinion, reversed Defendant's convictions after determining that under Rule 5–612 NMRA 2002, Defendant's absence from jury selection was "nonwaivable" and had created a "structural defect" which "automatically require[d] a new trial." *See State v. Padilla*, 2000–NMCA– 090, ¶¶ 1, 19, 129 N.M. 625, 11 P.3d 589, *cert. granted*, No. 26,540, 129 N.M. 519, 10 P.3d 843 (2000). The State petitioned this Court to issue a writ of certiorari to the Court of Appeals under NMSA 1978, § 34–5–14(B) (1972), which we granted. Although we concur in the result reached by the majority of the Court of Appeals, we are not in agreement with the reasoning of the opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant and a co-defendant attacked two employees of a bar which resulted in their being indicted for multiple counts of aggravated battery with a deadly weapon. The two men were set for a joint trial; the record does not indicate that either of the defendants objected to the joinder. On July 6, 1998, a jury pool was summoned to district court to select jury panels for Defendant's trial and another upcoming trial. Defendant's attorney was in court, but Defendant was not present. The trial court then issued a bench warrant for Defendant for failure to appear. Shortly thereafter, the co-defendant's attorney arrived with a signed statement from the co-defendant waiving his right to be present for jury selection. In the waiver, the co-defendant stated that he had been advised of his right to be present for jury selection and confirmed that his waiver of the right to be present was being made with the advice and consent of his attorney. Jury selection had not yet begun for the trial of Defendant and the co-defendant which was set for July 27, 1998. The co-defendant's waiver was read into the record by the trial court at the beginning of jury selection.

{3} When Defendant did not appear for jury selection, his attorney left and did not participate in jury selection. Because at that point neither Defendant nor his attorney was present, the trial court severed the trial so that the court could proceed with voir dire in the co-defendant's trial. After a lunch recess, Defendant came to the trial court but without his attorney. The trial court told

Defendant that he was free to go because the trial had been severed and that he and his attorney should appear in court the following morning to resolve the matter of the bench warrant. Jury selection then continued in the co-defendant's case. Defendant did not stay for any of the jury selection.

{4} At the bench warrant hearing the following morning, the trial court explained to Defendant and his attorney that the trials had been severed and a jury had been selected for the co-defendant's trial. Defendant's attorney told the court that Defendant had been absent from jury selection because he was confused about the trial date. The original scheduling order issued by the trial court had listed the date for jury selection as July 7, 1998. After clarifying some procedural details regarding the bench warrant, Defendant's attorney then asked the trial court to reconsider its decision to sever the trial. He stated that he and Defendant would be willing to waive the jury selection "irregularities" and proceed with a joint trial before the jury selected by the co-defendant's attorney. The trial court cautioned that if the defenses diverged at trial, Defendant would find himself in the position of being tried by a jury that had been picked by the co-defendant's attorney. At that point, Defendant's attorney offered to waive the jury selection issue "permanently." The trial court then agreed to the waiver and told the attorney that it would have to be filed before 5:00 p.m. that day. The entire hearing lasted seven minutes; the discussion about obtaining and filing the bench warrant occupied two-thirds of the time.

{5} Defendant's attorney prepared the following statement which he signed and Defendant co-signed:

### WAIVER OF JURY SELECTION IRREGULARITIES

COMES NOW Defendant CHRIS PADILLA and files this Waiver of Jury Irregularities, and in support of said waiver hereby states:

1) Defendant was not present for jury selection due to his uncertainty about the date of jury selection.

2) Defendant's counsel appeared initially for jury selection but did not return for completion of jury selection when Defendant failed to appear;

3) Co-defendant's attorney ... completed jury selection on behalf of his client;

4) Defendant Chris Padilla hereby waives his and his counsel's appearance at jury selection and requests to proceed to the evidentiary phase of trial with the jury as selected by co-defendant's counsel. Defendant Chris Padilla also waives any issue on appeal regarding this irregularity in the selection of the jury in his case.

Trial counsel submitted the statement to the court; no further hearings were held. An order was issued approving the waiver and permitting Defendant to "proceed to the evidentiary phase of the trial with the jury selected by his co-defendant's counsel." It is undisputed that both Defendant and his co-defendant were present on July 27, 1998, for the evidentiary phase of the trial. Defendant and the co-defendant were found guilty at that trial.

## II. DISCUSSION

### A. Presence at Jury Selection.

{6} On appeal, the State asks this Court to affirm Defendant's conviction, arguing that the Court of Appeals misconstrued Rule 5–612. The State's position is that the Court of Appeals was mistaken when it concluded, first, that Rule 5–612 does not permit a defendant to waive his initial appearance at trial and, second, that Defendant's absence from jury selection was a structural defect requiring automatic reversal. The State argues that the Rule does permit a waiver of presence and Defendant expressly waived any challenge to the manner in which the jury was selected. Relying upon the waiver, the State also protests Defendant's appeal arguing that, because he had waived his right to appeal this issue, the appropriate action for Defendant would be to pursue a habeas corpus claim. In response, Defendant asserts that the Court of Appeals correctly determined that Rule 5–612 contains a "no-waiver rule," the violation of which called for automatic reversal.

{7} The part of Rule 5–612 at issue contains the following language:

A. **Presence required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impanelling of the jury and the return of the verdict and imposition of any sentence, except as otherwise provided by the this rule.

B. **Continued presence not required.** The further progress of the trial, including the return of the verdict, shall not be prevented and the defendant shall be considered to have waived his right to be present whenever a defendant, initially present:

(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial); or

(2) engages in conduct which is such as to justify his being excluded from the courtroom.

{8} In arriving at its conclusion that Defendant could not waive his right to be present at jury selection because he had not been initially present, the Court of Appeals relied on *Crosby v. United States,* 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), and the common law. In *Crosby,* the Supreme Court had analyzed the language of Rule 43 of the Federal Rules of Criminal Procedure (the federal counterpart to our Rule 5–612) to determine whether the trial court had erred when it tried the defendant in absentia. In *Crosby,* the Supreme Court was dealing with the second section of Rule 43 which, like Section B of Rule 5–612, addresses those occasions when the trial court must make a determination of whether a defendant should be considered to have waived his or her presence, based on a *defendant's* actions. Although the defendant in *Crosby* had been notified of his trial date, he absconded before the start of the trial, and the court proceeded with his trial. *Id.* at 257, 113 S.Ct. 748. The trial court in *Crosby* had considered the defendant's failure to appear at trial to be a voluntary waiver of his right to be present. *Id.* at 257, 113 S.Ct. 748. The Supreme Court disagreed, concluding that the requirement for initial presence served to clarify whether a defendant's absence could be considered a knowing waiver. *Id.* at 261, 113 S.Ct. 748. In so doing, the Court relied upon *Diaz v. United States,* 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 (1912), which had held that the voluntary absence of a defendant from court after trial has begun constitutes waiver of the right to be present. *Crosby,* 506 U.S. at 261, 113 S.Ct. 748. In *Crosby,* the Supreme Court concluded that "Rule [43] treats midtrial flight as a knowing and voluntary waiver of the right to be present," but that a knowing waiver could not be ascertained from initial absence alone. *Id.* The Court held that because the defendant had not been present when the trial began, Rule 43 did not permit a trial in absentia in federal court. *Id.* at 262, 113 S.Ct. 748.

{9} The Court of Appeals found the factual differences between what occurred in *Crosby* and in this case to be immaterial and concluded that because Defendant was not initially present at jury selection, Rule 5–612 "did not authorize the trial court" to accept Defendant's waiver. *Padilla,* 2000–NMCA–090, ¶¶ 17–18, 129 N.M. 625, 11 P.3d 589. Therefore, the Court concluded, because Rule 5–612 was inapplicable, common law governed Defendant's case. Relying upon *Territory v. Lopez,* 3 N.M. 156, 164, 2 P. 364, 367 (1884), the Court of Appeals held that "in felony trials the defendant's presence is a mandatory, nonwaivable requirement." *Padilla,* 2000–NMCA–090, ¶¶ 10, 18, 129 N.M. 625, 11 P.3d 589.

{10} After reviewing the record and the law, we do not agree that the factual differences between this case and those in *Crosby* are immaterial. In this case, unlike *Crosby,* we are called upon to address an express waiver, not a waiver inferred from conduct. The Court in *Crosby* addressed only the circumstances of a defendant who fled before trial; it declined to express an opinion on whether the "right [of presence] constitutionally may be waived in other circumstances." *Crosby,* 506 U.S. at 261, 113 S.Ct. 748. Defendant asserts that the only waivers permissible under Rule 5–612 are those articulated in Section B. However, Section B of the federal and New Mexico rules is concerned

with implied waivers of the right to be present, not express waivers.

{11} There is no dispute that a criminal defendant charged with a felony has a constitutional right to be present and to have the assistance of an attorney at all critical stages of a trial. U.S. Const. amends. VI and XIV; N.M. Const. art II, § 14. The United States Supreme Court and this Court have described jury selection as "a critical stage of the criminal proceeding." *See Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); *State v. Garcia*, 95 N.M. 246, 249–50, 620 P.2d 1271, 1274–75 (1980). Our Rules of Criminal Procedures reflect the case law. Rule 5–506 NMRA 2002 lists the order in which a trial is to proceed and states that the first step shall be the selection and swearing of a qualified jury. *State v. Rackley*, 2000–NMCA–027, ¶ 4, 128 N.M. 761, 998 P.2d 1212. Rule 5–612(A) encompasses the constitutional right of presence, entitling a defendant to be present at every stage of the trial. *State v. Clements*, 108 N.M. 13, 17, 765 P.2d 1195, 1199 (Ct.App.1988).

{12} "The fact that a defendant has a right to be present does not answer the question of whether he [or she] may waive that right." *Campbell v. Blodgett*, 978 F.2d 1502, 1508 (9th Cir.1992) (per curiam). It is well settled that "[f]undamental rights, including constitutional rights, can be waived." *State v. Singleton*, 2001–NMCA–054, ¶ 11, 130 N.M. 583, 28 P.3d 1124, *cert. denied*, 130 N.M. 558, 28 P.3d 1099; *accord Peretz v. United States*, 501 U.S. 923, 936–37, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (listing cases). New Mexico courts have recognized a defendant's presence at trial may be waived. *See, e.g., Hovey v. State*, 104 N.M. 667, 670, 726 P.2d 344, 347 (1986) (stating that "defendant need not be present in court in order to waive his right to be present"); *State v. Corriz*, 86 N.M. 246, 248, 522 P.2d 793, 795 (1974) (holding that defendant had waived his right of presence in capital case by conduct); *Clements*, 108 N.M. at 18, 765 P.2d at 1200 (observing that "an accused may either expressly or by implication waive his right to be present by being voluntarily absent").

{13} Further, the Supreme Court has characterized the provisions of the Federal Rules of Criminal Procedure as being "presumptively waivable." *United States v. Mezzanatto*, 513 U.S. 196, 201–02, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (analyzing another rule of criminal procedure, the Court limited *Crosby* to its facts and observed that criminal defendants "may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution"). Other courts, for example, have held that a defendant can waive his or her right to be present at trial by being voluntarily absent from trial after it has begun, *see Taylor v. United States*, 414 U.S. 17, 18–20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam), by obtaining the court's permission to be absent, *see United States v. Jones*, 514 F.2d 1331, 1332 (D.C.Cir.1975), or by failing to make a timely objection to the holding of proceedings in his or her absence, *see United States v. Brown*, 571 F.2d 980, 987 (6th Cir.1978). "If defendants can waive fundamental constitutional rights, surely they are not precluded from waiving procedural rights granted by statute." *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992). This Court has taken a similar approach to Rule 5–612. As the State points out, Rule 5–612(A) states that a criminal defendant "shall be present at the arraignment" and yet defendants are routinely permitted to waive arraignment. This Court, in fact, has even adopted a criminal form to be used for that purpose. *See* Form 9–405 NMRA 2002.

{14} We conclude that the Court of Appeals' construction of Rule 5–612 is too narrow. The intent of the Rule is to protect the rights of a defendant, and he may waive that benefit. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (holding that the defendant could waive a jury trial and the assistance of counsel, the Court stated "that the procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities"). Moreover, the approach of the Court of Appeals has the potential for ignoring the "day-to-day realities of courtroom life," *see Rushen v. Spain*, 464 U.S. 114, 119, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), and inserting the

trial court into strategic decisions that should be made by a defendant and his or her attorney, *see United States v. Riddle*, 249 F.3d 529, 535 (6th Cir.2001) (holding that defendants voluntarily absented themselves from voir dire as "part of a defense strategy to avoid any prejudice resulting from the appearance of heavy security during the questioning of the potential jurors"). *See also Campbell*, 978 F.2d at 1512 (holding that defendant's waiver of his right to attend voir dire was tactical decision of the defendant and his trial counsel). We conclude therefore that Rule 5–612 does permit a trial court to accept a knowing, intelligent, and voluntary waiver of a defendant's presence either as an express waiver or as an implied waiver when a defendant has forfeited his or her right to presence by conduct.

{15} We are also not in accord with the notion that the common law rule of nonwaiver of appearance at felony trials should be resurrected. We find the discussion in the special concurrence in *Hovey* to be sound. *Hovey*, 104 N.M. at 671–72, 726 P.2d at 348–49. Justice Walters observed that this Court had "modified [the] early and intractable position" articulated in *Lopez*. *Id*. at 671, 726 P.2d at 348 (relying upon *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and *Diaz*). The modification of the nonwaiver of presence rule is reflected in *Clements*, 108 N.M. at 17, 765 P.2d at 1199, and *Corriz*, 86 N.M. at 247, 522 P.2d at 794. *See generally, Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Snyder v. Massachusetts*, 291 U.S. 97, 106–07, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *Frank v. Mangum*, 237 U.S. 309, 340–41, 35 S.Ct. 582, 59 L.Ed. 969 (1915).

{16} After concluding that Rule 5–612 could not be waived, the Court of Appeals then fashioned a per se rule that violation of the Rule constituted a structural error which mandated automatic reversal. *Padilla*, 2000–NMCA–090, ¶¶ 19–20, 129 N.M. 625, 11 P.3d 589. In reaching this conclusion, the Court relied upon language from a superseded edition of a treatise on criminal procedure and a 1986 dissent from Justice Stevens. *See* 3 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 26.6(a) (1984); *United States v. Lane*, 474 U.S. 438, 474, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (Stevens, J., concurring in part, dissenting in part). We are not persuaded that violation of a rule of criminal procedure constitutes a per se structural error. The Supreme Court has "found an error to be structural, and thus subject to automatic reversal, only in a very limited class of cases." *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that a jury instruction which omitted an element of the offense is an error subject to harmless error analysis) (quoted authority and internal quotation marks omitted). The Court listed cases in which structural error had been found: *Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction was structural error); *Vasquez v. Hillery*, 474 U.S. 254, 261–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury is not subject to harmless error review); *Waller v. Georgia*, 467 U.S. 39, 49 n. 3, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of the right to public trial not subject to harmless error analysis); *McKaskle v. Wiggins*, 465 U.S. 168, 177–78, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (reversal for denial of the right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (reversal for complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (reversal required for bias in trial judge who had financial interest in outcome).

■ {17} We conclude, therefore, that absence from jury selection is not a structural error requiring automatic reversal[1] and agree with the following language from *Riddle*:

---

1. We also note that, in both the current edition of his treatise and the one relied upon by the Court of Appeals, Professor LaFave, when actually discussing automatic reversal, also described the limited circumstances in which the Supreme Court has found structural error, none of which would apply to this case. *See* 3 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 26.6(d), at 272 (1984 & Supp. 1991); 5 Wayne R. LaFave et al., *Criminal Procedure* § 27.6(d), at 946 (2d ed. 1999).

To create an automatic reversal rule for voir dire absences would be to risk interference with the choices made by counsel and defendant for the defendant's benefit. . . . We decline to expand the limited list of structural rights whose violation constitutes per se error by adding the defendant's right to presence at voir dire. *Riddle*, 249 F.3d at 535. A more reasoned approach to resolving these questions is contained in the following language: "It seems clear that neither the Constitution nor the first sentence of Rule 43 [or Rule 5–612] precludes a waiver by an accused of his [or her] right to be present at his [or her] trial. The question in each case must be whether fair procedures have been followed, and the interests of substantial justice adequately served." *Cross v. United States*, 325 F.2d 629, 633 (D.C.Cir.1963) (Washington, J., concurring). Because we conclude that Rule 5–612 permits waiver, we must now ascertain whether Defendant's waiver was a proper one.

## B. Waiver.

{18} The State argues that Defendant waived his and his attorney's presence at jury selection and then waived his right to challenge those issues on appeal. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" which must be made in a knowing and voluntary manner. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). To determine the validity of a waiver, a reviewing court must consider "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* To be valid waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Whether a defendant made a valid knowing, intelligent, and voluntary waiver of his constitutional rights " 'is a question of law which we review de novo.' " *State v. Martinez*, 1999–NMSC–018, ¶ 15, 127 N.M. 207, 979 P.2d 718 (quoting *United States v. Toro–Pelaez*, 107 F.3d 819, 826 (10th Cir.1997)).

{19} The duty to protect fundamental rights "imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." *Zerbst*, 304 U.S. at 465, 58 S.Ct. 1019. "[T]he court's obligation to make sure that the waiver is valid, and is predicated upon a meaningful decision of the accused, does not require any particular ritual or form of questioning." *State v. Gilbert*, 78 N.M. 437, 440, 432 P.2d 402, 405 (1967). Although no particular litany of questions may be required, there must be a sufficient colloquy to satisfy the trial court's responsibilities; a knowing and voluntary waiver cannot be inferred from a silent record. *See Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) ("Presuming waiver from a silent record is impermissible."); *People v. Callahan*, 80 N.Y.2d 273, 590 N.Y.S.2d 46, 604 N.E.2d 108, 114 (1992). In this case, however, there was no record discussion between the trial court and Defendant concerning the waiver to determine whether Defendant understood the implications of the waiver and whether he, in fact, voluntarily agreed to it. There was no inquiry by the trial court to ensure that Defendant understood the nature of the constitutional and rule-based rights to establish that Defendant had conferred with his attorney about the waiver. In particular, a more careful examination was required in this case because Defendant's waiver was being made retroactively. In terms of a trial before this jury, his rights to presence and counsel had been lost. Because he was being asked to subsequently ratify that loss, it was incumbent upon the trial court to ensure that Defendant's waiver was knowingly and voluntarily made.

{20} Furthermore, there was no discussion at the hearing of the right to appeal. We have stated that a defendant may waive his or her right to appeal if the waiver is knowing, voluntary, and intelligent, and made with full knowledge of his or her rights. *See State v. Clark*, 1999–NMSC–035, ¶ 87, 128 N.M. 119, 990 P.2d 793. At the hearing, however, the word "appeal" was never spoken, much less discussed as a right of Defendant. Although there seems to have been an under-

standing between the trial court and the defense attorney as to the import of waiving the issue "permanently," the record does not reflect that Defendant shared that understanding or was informed of his right to appeal and the consequences of relinquishing that right. *See Smith v. Maldonado,* 103 N.M. 570, 573, 711 P.2d 15, 18 (1985) ("The focus of the inquiry is on the defendant's understanding . . . ."). Defendant did sign the "Waiver of Jury Selection Irregularities" prepared by his attorney. But the written waiver on its face does not adequately demonstrate that Defendant was sufficiently informed of his rights to knowingly and voluntarily waive them. The document does not state that Defendant knew, or that he had been counseled by his attorney, about the rights he was giving up or the possible consequences of that relinquishment. After the waiver was filed, the trial court approved the waiver without making further inquiry of Defendant.

{21} After considering the record concerning Defendant's waiver, the written waiver itself, and the circumstances surrounding it, we hold that the waiver was not voluntary, knowing, and intelligent. There was an insufficient inquiry to afford the trial court a basis for deciding the issue of waiver. We conclude that Defendant did not effectively waive his right of presence at jury selection, his right to representation, or his right to appeal. Although this Court recognizes a trial court's scheduling concerns or the expectations of an attorney who had planned for a joint trial, a defendant's rights may not be bargained away in such a manner. The trial court erred when it accepted Defendant's waiver of his rights and rejoined his trial with that of the co-defendant.

### C. Harmless Error.

{22} Having determined that the trial court erred, we now determine the effect of that error. The Rules of Criminal Procedure contain the appropriate standard for reviewing trial error:

A. **Harmless error.** Error in either the admission or the exclusion of evidence and error or defect in any ruling, order, act or omission by the court or by any of the

parties is not grounds for granting a new trial or for setting aside a verdict, . . . unless refusal to take any such action appears to the court inconsistent with substantial justice.

Rule 5–113(A) NMRA 2002; *see Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975) ("[A] violation of Rule 43 may in some circumstances be harmless error."). To the extent that the actions below infringed on specific constitutional guarantees, we apply the test for harmless error articulated in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman,* the Supreme Court rejected the argument that any constitutional error requires automatic reversal and held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 22, 87 S.Ct. 824; *accord State v. Woodward,* 121 N.M. 1, 9, 908 P.2d 231, 239 (1995). In those cases in which courts have held that a defendant's absence during the jury selection process was harmless and did not require reversal, the defendant was typically absent from only a part of the process. *See United States v. Gordon,* 829 F.2d 119, 127–28 (D.C.Cir.1987) (discussing cases). More importantly, in none of those cases was the defendant's attorney also absent from the selection process. "It bears emphasis that the right to be represented by counsel is among the most fundamental of rights." *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Under the facts and circumstances of this case, we hold that the absence of Defendant and his attorney from the jury selection process was not harmless beyond a reasonable doubt.

### III. CONCLUSION

{23} We hold that Rule 5–612 does not preclude an express waiver of presence by a defendant. The record in this case does not show that either Defendant's waiver of his and his attorney's presence at jury selection or his waiver of the right to appeal those absences was knowing and voluntary. The trial court erred in accepting the waiver and reinstating the joint trial. Because we conclude that the error was not harmless, we

vacate Defendant's convictions and remand this case for a new trial.

{24} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, and PETRA JIMENEZ MAES, Justice.

JOSEPH F. BACA, Justice (concurring in part and dissenting in part).

PAMELA B. MINZNER, Justice (specially concurring).

MINZNER, Justice (specially concurring).

{25} I concur in the result of the majority opinion. I believe, however, that the issue is "not whether the requirement of the defendant's initial presence ought to be subject to waiver like many other trial rights; but rather, whether, given the language of Rule 5–612 and our common-law heritage of treating the defendant's presence as non-waivable, [we have] in fact authorized such waivers." *State v. Padilla*, 2000–NMCA–090, ¶ 18 n. 1, 129 N.M. 625, 11 P.3d 589. The Court of Appeals majority opinion seems to me to construe Rule 5–612 NMRA 2002 persuasively and, based on that construction, to reach the result the rule should produce on the facts of this case.

{26} Section (A) of Rule 5–612 states that the defendant "shall be present . . . except as otherwise provided by this rule." Given that "shall" generally is read to denote something mandatory, I would conclude from Section (A) that a defendant's presence is mandatory unless an exception can be found in the remainder of Rule 5–612. I do not read the remaining sections of the rule to provide an exception that would allow for waiver of a defendant's initial presence. Section (C) lists exceptions not relevant to this appeal. Sections (B)(1) and (B)(2) provide for exceptions that could be read to apply to Defendant, except that both are expressly limited to those defendants who are "initially present." I would therefore conclude, as did a majority of the Court of Appeals, that Rule 5–612 does not authorize the waiver attempted by Defendant.

{27} I understand that defendants also have a constitutional right to be present at trial and that, as a general matter, constitutional rights can be waived. I do not think the question of whether, and in what circumstances, constitutional rights can be waived is relevant to this appeal. We are called upon to decide whether Rule 5–612 allows defendants to avoid being present at the beginning of their trial. I conclude that it does not, and that the failure of the trial court to insure Defendant's initial presence requires a new trial.

{28} I accept that Rule 5–612, Rule 43 of the Federal Rules of Criminal Procedure, and the cases from which the federal rule evolved were intended to apply to implied waivers, rather than express waivers. I recognize that the majority opinion distinguishes the federal cases and the federal rule on that basis. While I think that is a sensible distinction, I am not persuaded that it is grounded in the text of the rule. As the rule is written, I think the Court of Appeals majority correctly construed it to apply to both express and implied waivers and correctly determined that neither type of waiver will excuse Defendant's initial absence.

{29} I agree with the majority of the Court of Appeals when they wrote,

> In our view, the requirement of the defendant's initial presence at trial is largely symbolic, reflecting our society's traditional distrust of in absentia proceedings. Justice Stevens has suggested that harmless-error is inappropriate where the procedural right determined to have been violated serves "an independent value besides reliability of the outcome." *United States v. Lane*, 474 U.S. 438, 474, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (Stevens, J., concurring in part, dissenting in part). The requirement of the defendant's initial presence at trial serves 'an independent value besides reliability of the outcome' and is akin to a structural defect.

*Padilla*, 2000–NMCA–090, ¶ 20, 129 N.M. 625, 11 P.3d 589.

{30} As Rule 5–612 is written, it seems to me to describe the fundamental nature of a trial in our system of justice, at which the accused faces his or her accusers and participates in a process that is public, not only to

protect his or her rights, but also to promote public trust and confidence. At some point, by letting counsel for either party modify that process for individual ends, we have changed its fundamental nature. Rule 5–612 seems to me to protect that process except in certain specific, limited situations. I respectfully disagree with the majority when it suggests, as it does in paragraph 14, above, that any other result ignores practical realities and disrupts decisions that are more properly for a defendant and his counsel. The procedures that ought to govern a trial are for the trial court judge and for this Court in its rules of criminal procedure to control; some of those procedures can be waived, others ought not be waivable. The determination of which are waivable and which are not ought to be relatively clear in the rules this Court issues.

{31} I respectfully conclude that Rule 5–612 does not authorize the waiver Defendant attempted. For the reasons stated by the Court of Appeals in the majority opinion, I also would reverse Defendant's convictions and remand for a new trial.

BACA, Justice (concurring in part and dissenting in part).

{32} I concur in part and dissent in part. I agree with the Majority that Rule 5–612 allows a defendant to knowingly, intelligently, and voluntarily waive his or her right to be present at jury selection. Majority ¶ 14. However, I cannot concur in the result that the Majority has reached. Therefore, I respectfully dissent.

{33} In this case, the appellate record contains an affirmative waiver signed by Defendant and his attorney. As such, I believe that Defendant's more appropriate remedy in this case is through habeas corpus proceedings, as suggested by Judge Pickard of the Court of Appeals. *See Padilla*, 2000–NMCA–090, ¶¶ 23, 28, 129 N.M. 625, 11 P.3d 589 (Pickard, C.J., dissenting); *State v. Arellano*, 1998–NMSC–026, ¶ 19 n. 2, 125 N.M. 709, 965 P.2d 293; *Duncan v. Kerby*, 115 N.M. 344, 346–47, 851 P.2d 466, 468–69 (1993).

{34} Nonetheless, on the record before us, I can only conclude Defendant's waiver appears voluntary, knowing, and intelligent. No one disputes that a defendant can waive his or her fundamental rights. *See Hovey*, 104 N.M. at 670, 726 P.2d at 347; *Singleton*, 2001–NMCA–054, ¶ 11, 130 N.M. 583, 28 P.3d 1124. In *Arellano*, a decision by defense counsel based on trial strategy was sufficient for this Court to find waiver of defendant's right to a sworn jury. 1998–NMSC–026, ¶¶ 15–19, 125 N.M. 709, 965 P.2d 293. Defendant had failed to object to the fact that the jury was unsworn, even though defense counsel readily admitted to knowledge of this defect and characterized his decision not to alert the court as tactical. *Id.* On appeal, defendant argued that he did not voluntarily and intelligently waive his right to a sworn jury. *Id.* This Court rejected defendant's argument as defense counsel knew of the defect and decided for matters of strategy to go forward with trial and, thus, sufficiently waived the error. *Id.*

{35} Unlike *Arellano*, we do not need to infer a waiver from Defendant's actions or lack thereof in this case. Here, Defendant and his attorney both signed a written waiver of Defendant's right to presence at jury selection, his right to his counsel's presence at jury selection, and his right to appeal any issue arising from that jury selection. The Majority looks at these facts and sees Defendant's rights as "bargained away." Majority ¶ 21. I look at these facts and see an affirmative, signed waiver which clearly enumerates the irregularities that occurred during this jury selection. Defendant and his attorney made a strategic decision to request that Defendant's trial be rejoined with his prior co-defendant's and to go forward with a jury chosen by his prior co-defendant's attorney and, thus, invited the error of which Defendant now complains. *See State v. Handa*, 120 N.M. 38, 45–46, 897 P.2d 225, 232–33 (Ct.App.1995) ("[T]o allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice." (internal quotation marks omitted)). While I appreciate the Majority's concern that Defendant was waiving multiple rights in one fell swoop as it were, Defense counsel and Defendant both came into court the day

after jury selection and actively solicited the permission of the court to rejoin the trials and to waive the irregularities arising out of that jury selection. Indeed, the trial court warned Defendant and his counsel in open court of the dangers of going to trial with a jury picked without the assistance of Defendant or his attorney. *See, e.g., Riddle,* 249 F.3d 529, 533–35 (6th Cir.2001); *Cuoco v. United States,* 208 F.3d 27, 31–32 (2nd Cir. 2000); *Singleton,* 2001–NMCA–054, ¶¶ 11–16, 130 N.M. 583, 28 P.3d 1124. It is true Defendant did not verbally participate in the exchange with the trial court except as to the bench warrant. However, given the detail of the waiver drafted by Defendant's attorney and signed by both, I will not assume that Defendant's attorney failed to counsel Defendant as to the consequences of the waiver in this case. *See Arellano,* 1998–NMSC–026, ¶ 18, 125 N.M. 709, 965 P.2d 293.

{36} Accordingly, based on this record, I cannot concur with the Majority that Defendant's waiver was not voluntary, knowing and intelligent. Moreover, I believe that this issue is more properly reviewed through the writ of habeas corpus and not on direct appeal. Thus, I respectfully dissent.